IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD DORSEY,

      Petitioner,

      v.

CORRECTIONAL COMPLEX,

      Respondent.

            CASE NO. 2:14-CV-00158
            JUDGE GREGORY L. FROST
            MAGISTRATE JUDGE KEMP
            WARDEN, SOUTHERN OHIO

## OPINION AND ORDER

Petitioner, a state prisoner, brings the instant *Petition* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* Respondent's *Return of Writ,* Petitioner's *Traverse,* and the exhibits of the parties. For the reasons that follow, the Court **DENIES** the Petition and **DISMISSES** this action.

### I.    Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On February 25, 2006, a Pataskala police officer responded to an allegation of sexual assault reported by Pamela Parker on behalf of her mother, Bonnie Parker, age seventy-nine at the time. Prior to February 2006, Bonnie had lived independently; Bertha Dorsey, her daughter, and appellant, Bertha's husband, helped provide her with needed care and assistance, including delivery of prescription medicine and meals.
>
> The report was turned over to Pataskala Detective Andy Waugh for investigation. After the detective interviewed Bonnie Parker, she was taken to Grant Hospital in Columbus for a forensic rape examination. In the meantime, detectives collected evidence from her apartment.

After additional police investigation, the Licking County grand jury returned an indictment in December 2006 charging appellant with three identically-worded counts of rape and three identically-worded counts of gross sexual imposition ("GSI"). Each count identified Bonnie Parker as the alleged victim and averred that the offense occurred "between the dates of February 2005 through February 22, 2006." Each count alleged that each offense was committed by force or threat of force "and/or" while Bonnie's ability to consent to, or resist, sexual relations was substantially impaired due to her mental or physical condition, or advanced age.

The case first went to trial on June 14, 2007. Bonnie Parker did not testify in the jury trial. The parties agreed before trial that she was incompetent to testify.

At the conclusion of the State's case, the trial court directed an acquittal on two of the rape counts. The jury returned verdicts of guilty on the remaining counts, and rendered special findings stating that the State had failed to prove that appellant compelled his mother-in-law to submit to sexual conduct or sexual contact by force or threat of force. The court thereafter sentenced appellant to a maximum ten-year prison term on the rape conviction and concurrent one-year prison terms on the GSI convictions.

Appellant thereupon filed a notice of appeal to this Court. He therein raised a number of issues, including sufficiency of the evidence, manifest weight of the evidence, and ineffective assistance of trial counsel. However, on May 23, 2008, this Court affirmed appellant's convictions and sentence. *See State v. Dorsey*, Licking App.No.2007–CA–091, 2008–Ohio–2515 ("*Dorsey I*").

The Ohio Supreme Court refused to accept appellant's subsequent appeal. *See State v. Dorsey*, 119 Ohio St.3d 1487, 2008–Ohio–5273.

Appellant thereafter filed a federal habeas corpus action in the United States District Court for the Southern District of Ohio. The federal court determined that as a result of a

faulty jury instruction, appellant's case should be remanded to the Licking County Common Pleas Court for a new trial. *See Dorsey v. Banks* (S.D.Ohio 2010), 749 F.Supp.2d 715

The second jury trial commenced on January 24, 2011, as further analyzed *infra.* The State again relied on Bonnie's forensic interview at the hospital as part of its evidence of a specific incident of sexual intercourse between her and the appellant.

The jury ultimately returned guilty verdicts on the Rape and GSI counts. Appellant was again sentenced to a total of ten years of incarceration. In addition, over trial counsel's objection, appellant was labeled a Tier Ill sex offender.

On March 29, 2011, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

"I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY IMPROPERLY ADMITTING HEARSAY STATEMENTS OF THE ALLEGED VICTIM.

"II. THE DOCTRINE OF COLLATERAL ESTOPPEL BARRED THE ADMISSION OF EVIDENCE OF THE USE OF FORCE WHEN APPELLANT HAD BEEN PREVIOUSLY BEEN (SIC) ACQUITTED OF THAT CONDUCT. ADMISSION OF THIS EVIDENCE AND FAILURE TO GIVE A LIMITING INSTRUCTION CONSTITUTED DOUBLE JEOPARDY AND VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION AS WELL (SIC) THE OHIO CONSTITUTION.

"III. THE ADMISSION OF OTHER ACTS EVIDENCE VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS. IN ADDITION, THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE PROPER LIMITATIONS OF OTHER ACTS EVIDENCE

3

THEREBY VIOLATING APPELLANT'S RIGHT TO A FAIR
TRIAL AND DUE PROCESS.

"IV. APPELLANT'S CONVICTIONS WERE NOT
SUPPORTED BY SUFFICIENT EVIDENCE AND WERE
AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"V. RETROACTIVE APPLICATION OF THE PROVISIONS
OF SENATE BILL 10 TO APPELLANT VIOLATES THE
BAN ON RETROACTIVE LAWS SET FORTH IN ARTICLE
II, SECTION 28 OF THE OHIO CONSTITUTION AS
DECIDED IN STATE V. WILLIAMS, SLIP OPINION
NO.2011–OHIO–3374 AND THE BAN ON EX POST FACTO
LAWS CONTAINED (SIC) THE U.S. CONSTITUTION."

*State v. Dorsey*, No. 11 CA 39, 2012 WL 525529, at *1-2 (Licking Co. Feb. 17, 2012).  In that

decision, the court overruled the assignments of error and affirmed the conviction.

 On June 20, 2012, the Ohio Supreme Court denied leave to appeal and dismissed

the appeal as not involving any substantial constitutional question.  *State v. Dorsey*, 132

Ohio St.3d 1424 (Ohio 2012).  On September 5, 2012, the Ohio Supreme Court denied

Petitioner's motion for reconsideration.  *State v. Dorsey*, 132 Ohio St.3d 1518 (Ohio 2012).

On February 19, 2013, the United States Supreme Court denied Petitioner's petition for

a writ of *certiorari*.  *Dorsey v. Ohio,* 133 S.Ct. 1288 (2013).

On February 11, 2013, Petitioner filed the *Petition* currently before this Court.  As

his sole claim for relief, Petitioner asserts that he was convicted in violation of the

Confrontation Clause when "a self-described 'forensic nurse' acting, at least partially, as

an agent of law enforcement," testified about statements made by the victim.  (ECF No.

1, PageID# 3.)  Petitioner claims:

> At the second trial, the State again tried [Petitioner] for
> forcible rape and gross sexual imposition.  Mr. Dorsey

4

admitted to having sex with Bonnie Parker, the alleged victim, but asserted that the relations were consensual.

In order to demonstrate force and lack of consent, the State relied on a self-described "forensic nurse" who testified that Mrs. Parker (who died before the second trial) had told the forensic nurse that Mr. Dorsey had forced Mrs. Parker to have sex. The forensic nurse conceded that during her interview of Mrs. Parker she was working at least partially as an agent of law enforcement. She structured her interview based on forms labeled "forensic" and filled out a document labeled "evidence log." Also, Ms. Parker made her statements with an evidentiary purpose – the release she signed stated that she was "request[ing] a medical forensic examination to be performed on myself to obtain evidence for the prosecution of alleged assault offenses."

Because an express purpose of the questioning of Bonnie Parker was to obtain medical treatment and to assist law enforcement, the statements were testimonial and their admission violated Mr. Dorsey's right to confront witnesses against him.

It is the position of the Respondent that Petitioner's claim lacks merit.

## II.    Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* --- U.S. ----, ----, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter,* 562 U.S.786, ----, 131 S.Ct.

770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

> The factual findings of the state appellate court are presumed to be correct:

> > In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d)(1); *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). *See also* 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> > A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389

6

> (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748-49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, –––U.S. ––––, ––––, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor,* 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter,* 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis.  " '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " *Holder v. Palme*r, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills,* 521 F. App'x 398, 403 (6th Cir. 2013) (considering

evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

### III.    The Claim

Petitioner asserts that the introduction of Bonnie Parker's statements regarding use of force and lack of consent through Kailey Mahan, the sexual assault nurse examiner, or "SANE" nurse, violated the Confrontation Clause.  The state appellate court rejected this claim:

> [A]ppellant argues the trial court violated his constitutional right to confrontation by allowing the introduction at trial of out-of-court statements by the victim.FN1 We disagree.
>
> FN1. Appellant herein has limited his assigned error to issues of right to confrontation. We therefore need not address the issue of hearsay evidence per se.
>
> "[Q]uestions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo." *State v. Dunivant*, Stark App.No.2003CA00175, 2005–Ohio–1497, ¶ 7, citing *United States v. Wilmore* (C.A.9, 2004), 381 F.3d 868, 871.
>
> In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that under the Confrontation Clause, "testimonial" statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is

unavailable to testify and the defendant has had a prior opportunity for cross-examination.

About two years after *Crawford* was decided, the Ohio Supreme Court, in *State v. Stahl*, 111 Ohio St.3d 186, 2006–Ohio–5482, considered whether an adult rape victim had made testimonial statements to a nurse practitioner during a medical examination at a hospital "DOVE" unit specializing in health care for victims of rape. Regarding statements made to a medical professional, the Court adopted the objective-witness test from *Crawford:* "For Confrontation Clause purposes, a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* at paragraph one of the syllabus, quoting *Crawford* at 52. The Court also held: "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." *Id.* at paragraph two of the syllabus.

Appellant herein further directs us to *State v. Arnold*, 126 Ohio St.3d 290, 2010–Ohio–2742, wherein the Ohio Supreme Court held: "Statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination. * * * Statements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause." *Id.* at paragraphs one and two of the syllabus.

The Court in Arnold thus reaffirmed the "primary-purpose test" set forth in *State v. Siler*, 116 Ohio St.3d 39, 876 N.E.2d 534, 2007–Ohio–5637, which addressed, in light of *Crawford,* a child declarant's statements made in the course of a police interrogation.FN2

FN2. This may create the question of what test to apply now ("primary purpose" versus "objective witness") if the

9

questioner of the declarant is not a law enforcement officer or agent thereof, but is acting in somewhat of a dual role of medical professional and investigator. However, we find this distinction, in light of Arnold, does not affect our decision under the circumstances of the case *sub judice*.

In the case *sub judice*, it is undisputed that Bonnie Parker was incompetent at the time of the first trial and was not able to testify. By the time of the second trial, she had passed away. Appellant specifically contends that Bonnie's statement to Kailey Mahan, a forensic nurse and coordinator of the sexual assault nurse examiner ("S.A.N.E.") program, identifying appellant as her assailant is testimonial in nature under Crawford and is inadmissible pursuant to the Sixth Amendment. In particular, appellant challenges the following statements made by Bonnie to Nurse Mahan as part of a sexual assault evaluation, which Mahan repeated at trial:

"He [Appellant] grabbed me[,] hugged me and grabbed my boob and my pussy. He got on top of me and put his dick in my pussy and I fought him. He's been doing it to me for a while. If I'm not at home he does it to Pam." Tr. at 185.

At the point in time Bonnie made these statements to Nurse Mahan, she had already identified appellant as her assailant to the police. Mahan stated there is usually a victim's advocate present during the examination. Tr. at 170–172. She also stated that she completed a Sexual Assault Forensic Exam form. Tr. at 173. As part of the exam, she collected biographical information, medical history and information related to the assault. Mahan also noted that the consent form Bonnie signed authorized her to provide any evidence, photographs, records, and other information to Licking County law enforcement officials or the Prosecutor's Office for criminal investigation and prosecution. Tr. at 196.

Upon review, we find that Bonnie's statements, in toto, describing forms of sexual activity that would cause a medical professional to be concerned about the possibility of injuries and sexually transmitted diseases, are primarily statements for medical diagnosis and treatment. *See, e.g., Arnold* at ¶ 39. We further find Bonnie's objective motivation

10

in making these statements under the circumstances was to assist her medical providers.

Accordingly, upon review, we hold Bonnie Parker's statements (Tr. at 185) to Nurse Mahan were not testimonial and were properly admitted into evidence by the trial court pursuant to the rule of law set forth in *Crawford.*

Appellant's. . . Assignment of Error is therefore overruled.

*State v. Dorsey*, 2012 WL 525529, at *3.

Thus, the appellate court rejected Petitioner's claim by concluding that circumstances demonstrated that the primary purpose of the alleged victims statement to the SANE nurse were to obtain assistance from her medical providers. Petitioner asserts that this decision contravened or unreasonably applied federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented to the state courts, because Mahan worked as an agent of law enforcement; structured her interview around a sexual assault forensic examination form; and because the victim signed a release indicating that she was requesting the exam for the purpose of obtaining evidence for prosecution of alleged assault offenses. *Reply*, Doc.# 14, PageID# 1492.

## IV. Analysis

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v. Roberts*, 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay

11

statements violates the Confrontation Clause. The Supreme Court in *Crawford* held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness. Under *Crawford,* "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Id.* at 1366. The Supreme Court, however, left untouched application of *Roberts* to cases involving nontestimonial hearsay:

> "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does Roberts, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." Crawford, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying Crawford have observed,

> [t]he lynchpin of the Crawford decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in Crawford applies only to the former category of statements....

> [U]nless a particular hearsay statement qualifies as "testimonial," Crawford is inapplicable and Roberts still controls.

*Coy v. Renico*, 414 F.Supp.2d 744, 773 (E.D.Mich. 2006) (quoting *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005)); *Horton v. Allen*, 370 F.3d 75, 83–84 (1st Cir. 2004).

The Supreme Court declined to define a comprehensive definition of the term "testimonial," but indicated, at a minimum, the term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police

interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68. A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements within the protection of the Sixth Amendment. *Id.* at 51–55.

To determine whether a statement is testimonial, the Court "must decide whether it has 'a primary purpose of creating an out-of-court substitute for trial testimony.' " *Bullcoming*, 131 S.Ct. 2720 (Sotomayor, J. concurring)(quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Under the "primary purpose" test, statements "are testimonial when the circumstances objectively indicate" that their primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution." *Ohio v. Clark*, -- U.S. --, --, 135 S.Ct. 2173, 2179-80 (2015)(citing *Harmon v. Indiana*, 547 U.S. 813, 822 (2006)).[1] In making this inquiry, the Court must consider the circumstances under which the statements are made. *Davis,* 547 U.S. at 827.

Statements made to law enforcement during a 911 call do not constitute testimonial evidence under *Crawford.* *Davis v. Washington*, 547 U.S. 813 (2006). This is because objective circumstances indicate that the primary purpose of of the 911 operator's interrogation is to enable assistance for an ongoing emergency. *Id.* at 828.

> [T]he nature of what was asked and answered in Davis, . . .
> viewed objectively, was such that the elicited statements
> were necessary to be able to resolve the present emergency,
> rather than simply to learn (as in Crawford ) what had

---

[1] *Ohio v. Clark* involved admission of a child's out-of-court statements to a teacher identifying Clark as the perpetrator of child abuse.

> happened in the past. That is true even of the operator's
> effort to establish the identity of the assailant, so that the
> dispatched officers might know whether they would be
> encountering a violent felon. . . . And finally, the difference
> in the level of formality between the two interviews is
> striking. Crawford was responding calmly, at the station
> house, to a series of questions, with the officer-interrogator
> taping and making notes of her answers; McCottry's frantic
> answers were provided over the phone, in an environment
> that was not tranquil, or even (as far as any reasonable 911
> operator could make out) safe.

*Id.* The Supreme Court has similarly held that statements made by an alleged victim,

whom police found mortally wounded in a gas station parking lot, identifying and

describing the assailant as the shooter, do not constitute testimonial evidence within the

meaning of *Crawford*, as the circumstances under which such statements were made

indicate that the "primary purpose of the interrogation was to enable police assistance

to meet an ongoing emergency."  *Michigan v. Bryant*, 562 U.S. 344, 348 (2011)(quoting

*Davis,* at 822).

   In the Sixth Circuit, the test for determining whether a statement is deemed

testimonial within the meaning of *Crawford* is:

> . . . whether the declarant intends to bear testimony against
> the accused. That intent, in turn, may be determined by
> querying whether a reasonable person in the declarant's
> position would anticipate his statement being used against
> the accused in investigating and prosecuting the crime.

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

   The Court turns to the facts in this case.  Kaily Mahan testified that, on February

25, 2006, the date of the alleged victim's examination, Mahan was employed at Grant

Medical Center as an emergency room staff nurse and sexual assault examiner, or

14

SANE nurse. *Transcript*, Doc.# 7-1, PageID# 1025. She performed "clinicals" and crime lab observation. PageID# 1047. She had been provided courtroom training as a part of duties as a SANE nurse. PageID# 1048. The alleged victim, Bonnie Jean Parker, presented to Mahan on that date for a sexual assault examination for medical and legal purposes. PageID# 1027. Typically during such an examination, Mahan and a victim's advocate would be present. PageID# 1028. As a part of her examination, Mahan filled out a "Sexual Assault Forensic Exam Form" containing statements of the alleged victim. *Id.* In conjunction with the examination, Mahan took photographs and collected background information. PageID# 1029. The alleged victim indicated that the assault took place on February 23, 2006. PageID# 1031. Mahan obtained a verbal history from the alleged victim as a part of the legal document and to ascertain whether there existed potential injuries to assist with the examination and to make sure that the patient did not return to an unsafe situation. PageID# 1032-33. The alleged victim indicated that she had been sexually assaulted by the perpetrator for some time. PageID# 1040. Mahan photographed a bruise to the left inner thigh, noted tears on the posterior fourchette, redness to the right labia minora and purple red bruising to the vaginal wall. PageID# 1042-43. She conducted an internal examination of the alleged victim. PageID# 1043. Antibiotics were prescribed as a prophylactic treatment against STDs. PageID# 1044. The physician also conducted an examination of the alleged victim. PageID# 1045. Mahan collected a "rape kit." *Id.* The authorization form signed by the patient indicated that she authorized the SANE nurse to provide evidence, photographs, records and other information to the Licking Police Department and

Licking County Prosecutor's Office for criminal investigation and prosecution. PageID# 1051. The document had a dual purpose – to provide consent for the examination, and information to law enforcement. PageID# 1053. The term "forensic" indicated that consent was given to provide information for police investigation.

> Q. So that's. . . the essence of this form is it's forensic. It's for legal purposes, correct?
>
> A. Yes, in part.

PageID# 1053-54. Dr. David Schmidt conducted the medical examination outside of the presence of Mahan. PageID# 1059. He did not conduct a pelvic examination. PageID# 1060. The hospital kept the medical records that were not a part of the legal documents. PageID# 1067. Mahan obtained a rape kit for law enforcement purposes. PageID# 1070. In so doing, she took swabs for collection of evidence from the alleged victim's mouth, vagina, rectum, left neck and under the fingernails. This evidence was sealed and placed in the rape kit in a locked refrigerator in the locked exam room for law enforcement to pick up. PageID# 1071. After she signed her report, part of it was locked in the SANE chart, with the SANE charts, part of it went to the lab, and part of it went to the police. PageID# 1073-74. The alleged victim's statement about what happened went to the crime lab and to the police. PageID# 1074. One copy of the report remained at the hospital, and the other two copies were sent for law enforcement purposes. PageID# 1075. A copy of the report would not be sent to the family doctor. *Id.* Mahan conducted an internal and pelvic examination. PageID# 1078.

Petitioner argues the objective circumstances indicate that statements of the accused during the examination constituted testimonial evidence prohibited by the Confrontation Clause.  In support, Petitioner refers, *inter alia*, to the decision of the United States Court of Appeals for the Eighth Circuit in *Bobadilla v. Carlson*, 575 F.3d 785 (8th Cir. 2009).

However, the circumstances in *Bobadilla* are not analogous to the scenario in this case.  In *Bobadilla,* the alleged victim, a three-year-old, was examined by a physician after disclosing abuse to his mother.  The physician determined that the results of the exam were consistent with abuse.  A police officer then interviewed the alleged victim's parents and an emergency room nurse.  *Id*. at 787.

> Five days later, Detective Matthew L. Akerson of the Willmar Police Department conducted an interview with T.B. Detective Akerson contacted Cherlynn Molden, a social worker employed by the Kandiyohi County Family Service Department and asked her to assist with the interview. According to Molden, "Detective Akerson from the Police Department asked me to assist him in interviewing [T.B.]. I wasn't involved in that part of the investigation [that is, the criminal investigation], but he asked me to assist him."

> Molden contacted T.B.'s mother and asked her to bring T.B. to the police department. T.B. was escorted to a room specifically designed to make children comfortable while being questioned about allegations of sexual abuse. A camera hidden behind a one-way mirror recorded the interview. Molden sat next to T.B. and asked him questions, while Akerson sat across from T.B. and observed. Molden utilized a "forensic" technique known as the "CornerHouse technique," which consists of asking questions in a structured manner to ascertain the nature of any sexual abuse. In response to the questions, T.B. confirmed the abuse he had first reported to his mother.

*Id*. at 787-88.  The Eighth Circuit Court of Appeals concluded that, under these circumstances, the child's statements constituted the type of testimonial prohibited under *Crawford*.  Such are not the circumstances here.

While on direct review, this Court might agree with Petitioner's argument that the objective circumstances of this case indicate that the statements of the alleged victim to Mahan were for the primary purpose of obtaining evidence against the Petitioner at trial – a conclusion this Court also endorsed in its earlier decision in this case, *Dorsey v. Banks*, 749 F.Supp.2d 715 (S.D. Ohio 2010) --  the Ohio Court of Appeals concluded to the contrary, finding that the statements were made for the purpose of obtaining medical diagnosis and treatment.  The Court cannot say that the evidence supports only one conclusion.   There can be fair minded disagreement on the issue.   Such disagreement alone precludes habeas relief.  *Tapke v. Brunsman*, 565 Fed.Appx. 430, 436 (6th Cir. 2014)(citing *White v. Woodal*,  134 S.Ct. 1697, 1700 (2014)).  Further, the United States Supreme Court has not considered whether the Confrontation Clause prohibits admission of statements made for the dual purpose of providing medical care and obtaining evidence for trial.

The Supreme Court has explained that

> § 2254(d)(1) "provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend this Court's precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. ––––, 134 S.Ct. 1697, 1700, 188 L.Ed.2d 698 (2014). In other words, "if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established...." *Id.* at 1700 (quoting *Yarborough v. Alvarado*,

> 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004))
> (internal quotation marks omitted). While "the difference
> between applying a rule and extending it is not always
> clear," "[c]ertain principles are fundamental enough that
> when new factual permutations arise, the necessity to apply
> the earlier rule will be beyond doubt." *Yarborough*, 541 U.S.
> at 666, 124 S.Ct. 2140. "The critical point is that relief is
> available under § 2254(d)(1)'s unreasonable-application
> clause if, and only if, it is so obvious that a clearly
> established rule applies to a given set of facts that there
> could be no 'fairminded disagreement' on the question."
> *White*, 134 S.Ct. at 1700 (quoting *Harrington*, 131 S.Ct. at 786).

*Tapke v. Brunsman*, 565 Fed.Appx. 430, 435 (6th Cir. 2014).  This Court does not conclude

that such were the circumstances here.  In reality, the law in this area is no more clearly

established than it was in 2010 when the Court rejected this identical claim.  Decisions

such as *Ohio v. Clark, supra*, have reaffirmed *Crawford's* "testimonial" approach but have

not provided any more guidance as to how to apply that test to circumstances like

these.  Consequently, Petitioner is not entitled to relief.

## V.    Disposition

For these reasons, the *Petition* for a writ of habeas corpus is **DENIED** and this

case is **DISMISSED**.

## VI.    Request for a Certificate of Appealability

Petitioner has requested a certificate of appealability.

"In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of

habeas corpus in federal court holds no automatic right to appeal from an adverse

decision by a district court."  *Jordan v. Fisher*, -- U.S. --. --, 135 S.Ct. 2647, 2650 (2015); 28

U.S.C. § 2253(c)(1)(requiring a habeas petitioner to obtain a certificate of appealability in

order to appeal.)  The petitioner must establish the substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).   This standard is a codification of *Barefoot v. Estelle*, 463 U.S. 880 (1983). *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (recognizing codification of *Barefoot* in 28 U.S.C. § 2253(c)(2)). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack,* 529 U.S. at 484 (quoting *Barefoot*, 463 U.S., at 893 n. 4).

The Court is persuaded that Petitioner has met this standard here.  His request for a certificate of appealability therefore is **GRANTED.**   The Court certifies the following issue for appeal:

> Did admission of the SANE nurse's testimony regarding statements of the alleged victim violate the Confrontation Clause?

**IT IS SO ORDERED.**

 /s/  GREGORY L. FROST
GREGORY L. FROST
United States District Judge